No. 24-13672

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## *for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

———————— ◆ ————————

KALIL DESIGN CONCEPTS, LLC,

*Plaintiff/Counter-Defendant-Appellant,*

– v. –

THOMAS E. POWNALL, et al.,

*Defendants/Counter-Plaintiffs-Appellees.*

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 2:22-CV-14429-CIV-
CANNON/McCabe

## **APPELLANT'S BRIEF**

DONNA GREENSPAN SOLOMON
FL Bar No. 059110
Donna@SolomonAppeals.com
SOLOMON APPEALS,
MEDIATION & ARBITRATION
901 So. Federal Hwy, Ste. 300
Ft. Lauderdale, FL  33316
561-762-9932
*Lead Counsel*

DONALD THOMAS
FL Bar No. 834599
don@cbrlawgroup.com
CBR LAW GROUP, LLP
55 Ne 5th Ave Ste 503
Boca Raton, FL 33432
561-609-1515

## COUNSEL FOR KALIL DESIGN CONCEPTS, LLC

Case No. 24-13672-A

*Kalil Design Concepts, LLC v. Thomas Pownall, et al.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the following is a complete list of the persons and entities who have an interest in the outcome of this case:

Cannon, Aileen, U.S. District Judge

CBR Law Group, LLLP, Counsel for Plaintiff/Appellant

Garnecki, Georgia T., Counsel for Plaintiff

Haynsworth Sinkler Boyd, P.A., Counsel for Defendants

Joffe, David J., Lead Counsel for Defendants/Appellees

Joffe Law, PA, Counsel for Defendants/Appellees

Kalil, Anthony, Individually

Kalil, Margarette, Individually

Kalil Design Concepts, LLC, Plaintiff/Appellant

Major, Denny P., Counsel for Defendants

Pownall, Thomas E., Defendant/Appellee

Prestige Composites, Inc., Defendant/Appellee

Solomon, Donna Greenspan, Lead Counsel for Appellant

Solomon Appeals, Mediation & Arbitration, Counsel for Appellant

Thomas, Donald J., Counsel for Plaintiff/Appellant

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal concerns the ownership of physical boat molds ("Barracuda" and "Rhino") and their related intellectual property, as well as the validity and enforceability of a written license agreement. It is respectfully suggested that oral argument would be of assistance to the Court in resolving the issues presented in this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF CITATIONS ......................................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ....1

STATEMENT OF THE ISSUES.............................................................. 2

STATEMENT OF THE CASE.................................................................. 3

   I.  Course of Proceedings.........................................................3

   II.  Statement of the facts .......................................................3

   III.  Statement of the standard of review ..............................16

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ......................................................................................22

   I.  THE DISTRICT COURT ERRED IN FINDING ON SUMMARY JUDGMENT THAT KDC IS NEITHER THE OWNER NOR TRANSFEREE OF THE BARRACUDA MOLDS......................................22

   II.  THE DISTRICT COURT ERRED IN FINDING THAT THE WRITTEN LICENSE AGREEMENT IS INVALID AND UNENFORCEABLE .........32

   III.  THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT (BREACH OF THE LICENSE AGREEMENT), COUNT III OF THE COMPLAINT (SEEKING DECLARATORY JUDGMENT AS TO VALIDITY AND ENFORCEABILITY OF LICENSE AGREEMENT AND RETURN OF PERSONAL PROPERTY), AND COUNT III OF THE

COUNTERCLAIM (SEEKING DECLARATORY JUDGMENT THAT LICENSE AGREEMENT IS INVALID AND UNENFORCEABLE .........34

IV. THE DISTRICT COURT ERRED IN FINDING ON SUMMARY JUDGMENT THAT APPELLEES OWN THE RHINO MOLDS AND THEREFORE GRANTING SUMMARY JUDGMENT TO APPELLEES ON COUNT VI OF THE COUNTERCLAIM (SEEKING DECLARATORY JUDGMENT THAT POWNALL IS OWNER OF RHINO MOLDS).........34

V. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON COUNT II OF THE COMPLAINT (CONVERSION OF THE BARRACUDA AND RHINO MOLDS) ..........37

CONCLUSION ...................................................................38

CERTIFICATE OF COMPLIANCE....................................39

CERTIFICATE OF SERVICE ..............................................40

## <u>TABLE OF CITATIONS</u>

**Cases**

*Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-386-EAK-MAP, 2014 WL 2003128 (M.D. Fla. May 15, 2014) ............................................................ 20, 30

*Am. Tech. Ventures, LLC v. Orlov*, No. 20-23728-CIV, 2021 WL 4973536 (S.D. Fla. June 9, 2021) ........................................................................................ 20, 30

*Bradley v. Health Coal, Inc.*, 687 So. 2d 329 (Fla. 3d DCA 1997)................. 35, 37

*CNJ Realty Associates, LLC v. Yankiv*, 50 Fla. L. Weekly D117 (Fla. 2d DCA Jan. 3, 2025)...........................................................................................................24

*ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257 (S.D. Fla. 2020).... 23, 24

*Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500 (Fla. 4th DCA 2003) ...........................................................................................................23

*Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435 (7th Cir. 1993) ...........35

*Delices v. Martin*, No. 3:22CV5051/MCR/ZCB, 2024 WL 2886174, at *2 (N.D. Fla. Feb. 27, 2024)...................................................................................17

*Fitzgerald v. Mercedes-Benz Fin. Services USA, LLC*, No. 3:22-CV-1053-MMH-PDB, 2024 WL 3377743 (M.D. Fla. July 11, 2024)...........................................24

*Hall v. Bennett*, 447 F. App'x 921, 924 (11th Cir. 2011) ................................. 17, 32

*Harrison v. City of Fort Lauderdale*, No. 17-61164-CIV, 2018 WL 9516029 (S.D. Fla. Dec. 21, 2018) ..................................................................................... 17, 31

*Harrison v. Davidson Hotel Co., LLC*, 806 Fed. Appx. 684 (11th Cir. 2020).................................................................................... 17, 32

*Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96 (11th Cir. 1995)...........................................................................................................30

*Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338 (Fla. 3d DCA 2002) ...................................................................................... 18, 24

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962 (11th Cir. 2014) ...................................................................................................26

*John M. Floyd & Associates, Inc. v. First Florida Credit Union*, 443 Fed. Appx. 396 (11th Cir. 2011) ...............................................................................27

*Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) ........... 4, 16

Morali v. Mayan, 377 So. 3d 1182 (Fla. 4th DCA 2024).........................................24

*Nix v. Carter*, No. 5:10-CV-256, 2012 WL 1019162 (M.D. Ga. Mar. 26, 2012) ................................................................ 18, 32

*O'Neal v. Santiago*, No. 23-11303, 2024 WL 3339237, at *1 (11th Cir. July 9, 2024) ........................................................................................ 17, 31

*Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001).........................17

*Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356 (S.D. Fla. 2015) ............................................................................................. 19, 30

*Roach v. M/V Aqua Grace*, 857 F.2d 1575 (11th Cir. 1988)............................... 4, 16

*Sears v. Warden*, 762 F. App'x 910 (11th Cir. 2019) ..............................................32

*Seritage SRC Fin., LLC v. Town Ctr. at Boca Raton Tr.*, 397 So. 3d 44 (Fla. 4th DCA 2024) .......................................................................................... 18, 26

*State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173 (11th Cir. 2023) .........28

*Stewart v. Hooters of Am., Inc.*, 432 Fed. Appx. 903 (11th Cir. 2011)............. 19, 29

*United States v. Florida W. Intern. Airways, Inc.*, 853 F. Supp. 2d 1209 (S.D. Fla. 2012) ...................................................................................................27

*United Water Restor. Grp. Inc. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025 (Fla. Dist. Ct. App. 2015)..........................................................................................36

*Ventures, LLC v. Orlov*, No. 20-23728-CIV, 2021 WL 4973536 (S.D. Fla. June 9, 2021) ...........................................................................................................30

**Statutes**

17 U.S.C. § 204 ............................................................................... 19, 29

28 U.S.C. § 129 ................................................................................................1

**Rules**

Fed. R. Civ. P. 56(a)................................................................................ 17, 31

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

On August 27, 2024, the district court of the Southern District of Florida entered an Order on Motions For Summary Judgment Hearing.  [DE 135].  On October 9, 2024, the court entered an Order Granting Motions for Partial Final Judgment and Entering Partial Final Judgment ("Partial Final Judgment").  [DE 141].  Appellant timely filed a Notice of Appeal [DE 147] on November 6, 2024.

On November 6, 2024, the Court issued a jurisdictional question.  [Doc 13-1].  Responses were filed by Appellees on December 9, 2024 [Doc 16] and by Appellant on December 10, 2024 [Doc 19].  The Court has not yet ruled on the jurisdictional question.  To the extent that the Court rules that it has jurisdiction, the Court has jurisdiction pursuant to 28 U.S.C. § 129 to review the Partial Final Judgment [DE 141] and all rulings, proceedings, orders, findings, and decisions interlocutory thereto or underlying the Partial Final Judgment.

On December 19, 2024, the Court entered an order granting Appellant's motion to extend to March 24, 2025 the deadline to file Appellant's initial brief. [Doc 23].  The issuance of the pending jurisdictional question "does not stay the time for filing appellant's briefs."  [Doc 13-1].

1

## **STATEMENT OF THE ISSUES**

1. Whether the district court erred in finding on summary judgment that Appellant is neither the owner nor transferee of the Barracuda Molds and that the written License Agreement is thus invalid and unenforceable, and therefore granting Appellees' motion for summary judgment as to Count I of the Complaint (breach of the License Agreement), Count III of the Complaint (seeking declaratory judgment as to validity and enforceability of License Agreement and return of personal property), and Count III of the Counterclaim (seeking declaratory judgment that License Agreement is invalid and unenforceable).

2. Whether the district court erred in finding on summary judgment that Appellees own the Rhino Molds and therefore granting summary judgment to Appellees on Count VI of the Counterclaim (seeking declaratory judgment that Pownall is owner of Rhino Molds).

3. Whether the district court erred in granting summary judgment to Appellees on Count II of the Complaint (conversion of the Barracuda and Rhino Molds).

## STATEMENT OF THE CASE

### I.  Course of Proceedings.

Appellant/Plaintiff Kalil Design Concepts, LLC ("KDC," "Licensor", or "Appellant") filed its Complaint [DE 1] against Appellees/Defendants Thomas E. Pownall ("Pownall") and Prestige Composites, Inc. ("Prestige," together with Pownall, "Appellees" or "Licensee") in the Southern District of Florida (Martin County Division) on December 28, 2022.  Appellees filed an Answer and Counterclaim [DE 19] on February 16, 2023 and an Amended Answer and Counterclaim [DE 70] on September 13, 2023.  KDC filed its Answer to Amended Counterclaim [DE 71] on September 27, 2023.

On August 27, 2024, the district court of the Southern District of Florida entered an Order on Motions For Summary Judgment Hearing ("Summary Judgment Order").  [DE 135].  On October 9, 2024, the court entered Partial Final Judgment. [DE 141].

Appellant seeks review of the Summary Judgment Order [DE 135] and the Partial Final Judgment [DE 141].

### II.  Statement of the facts.

This appeal concerns two sets of boat molds and plugs: 1) Barracuda boat molds and plugs ("Barracuda Molds"), and 2) Rhino molds and plugs ("Rhino Molds," together with the Barracuda Molds, the "Molds").  [DE 88].

3

The dispute centers on the ownership of each of the Molds and the enforceability of an agreement to license the Molds.

Appellant KDC is a Florida limited liability company, whose two sole members are Anthony Kalil ("Kalil") and his wife, Margarette Kalil. [DE 19, p.8; DE 88, p.2]. On December 29, 2020, Kalil and Pownall signed a "License Agreement Among Kalil Design Concepts, LLC., Anthony Kalil and Thomas Pownall, and Prestige Composite SC, LLC" ("License Agreement"). [DE 1, pp. 9-24; DE 101-1, pp. 161-75; DE 96]. Appellees deny that Pownall signed the *written* License Agreement, alleging instead that they entered into an "**<u>oral</u>** license agreement with Plaintiff," with unspecified terms. [DE 70, p.3].

"Of course, in evaluating a motion for summary judgment, the inferences to be drawn from the underlying facts contained in the materials presented to the court must be viewed in the light most favorable to the party opposing the motion." *Roach v. M/V Aqua Grace*, 857 F.2d 1575, 1582 (11th Cir. 1988). "The nonmoving party's evidence must be taken as true." *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). Thus, for purposes of this appeal of the summary judgment entered against KDC, it must be taken as true that Kalil and Pownall signed the written License Agreement.

The License Agreement was signed by Pownall individually and on behalf of Prestige. [DE 1, pp. 22-23]. The License Agreement was signed by Kalil under the

name "Kalil Design Concepts, Inc." There was no line for Kalil to sign individually. [DE 1, pp. 22-23]. However, the cover page of the License Agreement names Kalil, individually, as one of the parties:

LICENSE AGREEMENT

AMONG

KALIL DESIGN CONCEPTS, LLC., **ANTHONY KALIL**

AND

THOMAS POWNALL, AND PRESTIGE COMPOSITE SC, LLC

[DE 1, p.9 (emphasis supplied)].

Pursuant to the License Agreement, Pownall and Prestige, together as "Licensee," "desire[d] to obtain a world-wide license from Licensor . . . to Make, Use or Sell methods, processes, and/or products that incorporate, use or exploit the Licensed Technology for the purpose of developing and commercializing such boats . . . ." [DE 1, p. 10]. KDC, as "Licensor, agreed to "take all steps necessary to <u>grant or cause to be granted</u> to Licensee the "Licensed Patents" (as defined below), molds, plugs and <u>Know-How</u> (as defined below)." [DE 1, p.10 (emphasis supplied)].

"Know-How" is defined as "includ[ing] <u>all Barracuda Plugs, Molds, and Designs</u>." [DE 1, p.11 (emphasis supplied)]. Appellees/Licensee "acknowledge[d] that <u>ownership</u> of all Plugs and Molds for producing Products (<u>including all Barracuda Plugs and Molds</u>, as well as other Plugs and Molds <u>owned by Licensor or</u>

5

Licensor's affiliate) . . . resides with" KDC, as "Licensor." [DE 1, p. 12 (emphasis supplied)].

The term "Licensed Technology" is defined to "mean and include all Licensed Molds, Patents and Know-How." [DE 1, p. 10]. Exhibit 1 to the License Agreement, titled "Licensed Patents," lists several items of intellectual property, including one (1) trademark, two (2) patents, and one (1) copyright:

> U.S. Trademark "BARRACUDA" for Class 012 Boats. Serial Number 78811036 [DE 81-4, p.4];
>
> U.S. Patent Serial Number 7,055,451 FasTab Hull [DE 81-5, p.2];
>
> U.S. Patent Serial Number 9,403,581 Privacy Enclosure [DE 81-6, p.2]; and
>
> U.S. DVH 0475 Visual Trademark [Copyright] for Barracuda Style and Trade dress [DE 81-7, pp. 2-3].

[DE 1, p. 24]. As the district court found, this intellectual property is registered in Kalil's name.[1] [DE 135, p.10].

The License Agreement contains a liquidated damages provision in the event of Appellees' failure to return the Molds upon KDC's demand:

> 2.7 The parties expressly agree that the **Molds are the exclusive property of Licensor and are subject to being returned to Licensor at any time**, on no more than 7 days notice. Given the potential damage to Licensor by any delay in returning its molds after any demand, (in writing, by e-mail or in person), the parties stipulate that should any demand for the return of the molds be refused, or delayed, in other than undamaged good working order, **Licensor shall be entitled to liquidated damages of $1,000 per day from**

---

[1] The court referred only to the patents and copyright, not the trademark, but the trademark is also registered in Kalil's name. [DE 135 p. 10; DE 81-4, p.4].

**Licensee** for every day delay in returning the molds or replacing them if damaged.

[DE 1, p.13 (emphasis supplied)].

The License Agreement advised that the Barracuda Molds were located at "the Storage Lot, Palm City, Florida 34990." [DE 1, p.11]. The License Agreement provided that "Licensee would transport all Barracuda Plugs and Molds from Palm City Florida 34990" to its own facilities in South Carolina. [DE 1, p.16].

On May 23, 2021, KDC and nonparty Ronnie White ("White") executed a Purchase Agreement ("KDC/White Agreement") whereby White sold to KDC his Rhino Molds and Know-How. [DE 101-3]. The KDC/White Agreement required KDC to pay $40,000 within 2 years (24 months) of execution of the KDC/White Agreement – i.e., by May 23, 2023 – or else all rights and ownership in the Rhino Molds was to revert back to White. [DE 101-3, pp. 4-5]. In the meantime, the Rhino Molds would "solely belong to Purchaser [KDC]" and KDC was entitled to possession of the Rhino Molds. [DE 101-3, p.5].

After KDC and White executed the KDC/White Agreement, KDC allowed Appellees to take possession of the Rhino Molds. Pownall picked up the Rhino Molds in Georgia and brought them to Appellees' facility in South Carolina. [DE 81, p.5]. Although the License Agreement, signed in 2020, does not specifically name the later-acquired Rhino Molds, the License Agreement indicates that it applies to other Plugs and Molds obtained in the future: "Additional models will

7

have royalty agreements structured <u>as they become available</u>." [DE 1, p.14 (emphasis supplied)]. There is no evidence of any written or oral agreement, *other than* the written License Agreement, that would have applied to Appellees' possession and use of the Rhino Molds.

The relationship between Kalil/KDC and Pownall/Prestige subsequently turned sour. [DE 135, p. 5]. On June 17, 2022, KDC's attorney sent a demand letter to Appellees demanding the return of the Molds. [DE 101-7]. Pownall refused. [DE 101-8].

On December 28, 2022, KDC filed its Complaint against Appellees. [DE 1]. The Complaint alleged: Count I (Breach of the License Agreement); Count II (Conversion of the Barracuda and Rhino Molds); and Count III (seeking declaratory judgment as to return of personal property).[2] [DE 1, pp. 4-7]. Appellees filed their initial Answer and Counterclaim on February 16, 2023. [De 19].

Meanwhile, on June 25, 2022, unbeknownst to KDC, White assigned his rights under the KDC/White Agreement to Pownall in exchange for $40,000. [DE 135, p.4]. In 2023 -- still unaware of the White/Pownall assignment -- Kalil contacted White in connection with the $40,000 payment coming due on May 23, 2023 under the KDC/White Agreement. [DE 134, p. 55]. Kalil learned for the first

---

[2] The district court interpreted Count III of the Complaint as seeking a declaration that the License Agreement is valid and enforceable. [DE 135, p.5].

time that White had transferred his interest in the Rhino molds to Pownall, with payment under the KDC/White Agreement due to Pownall rather than White. [DE 134, p. 55]. By that time, close to a year had passed since Appellees had refused to return the Molds.

On May 23, 2023, KDC filed a "Motion to Deposit Funds into Court Registry to Complete Purchase of Rhino Boat Molds Pursuant to [the KDC/White] Purchase Agreement Dated May 23, 2021," seeking to "preserve the status quo" pending resolution of the case. [DE 46]. KDC noted that it was wire transferring the $40,000 per the KDC/White Agreement into its counsel's trust account [DE 46, p.3], the receipt of which was acknowledged by KDC's counsel. [DE 47]. On June 21, 2023, the Court entered a paperless order allowing KDC to deposit the $40,000 into the court registry pending resolution of the case or further order. The Court stated: "Nothing in this Order should be construed as an indication of the merits of the underlying dispute in this case." [DE 52].

On September 13, 2023, Appellees filed an Amended Answer and Counterclaim. [DE 70]. The Counterclaim alleged: Count I (Breach of oral contract, for failure to reimburse Prestige for transportation and storage costs); Count II (Unjust enrichment, made in the alternative to Count I); Count III (seeking declaratory judgment that the written License Agreement was invalid and unenforceable); Count IV (claiming that Pownall's signature on the License

9

Agreement was a forgery); Count V (FDUTPA claim); Count VI (seeking declaratory judgment that Pownall was the owner of the Rhino Molds); Count VII (aiding and abetting in the alternative to Count VI); and Count VIII (tortious interference in the alternative to Count VI). [DE 70, pp. 12-19].

Although the parties disputed whether the license agreement they entered into was written or oral, there was initially *no* dispute that KDC and Appellees had, in fact, entered into a license agreement. Further, although Appellees claimed ownership of the Rhino Molds via assignment, there was no dispute that KDC owned the Barracuda Molds at the time that the parties entered into a license agreement, be it either the written License Agreement or an oral license agreement (with unspecified terms).

In fact, in their Amended Answer, Appellees, in referring to KDC as "Plaintiff" or "Kalil," *admitted* KDC's ownership of the Barracuda Molds:

> 5. On or about December 30, 2020, **Plaintiff** orally agreed to license **its molds and plugs** used in boat hull manufacturing to Prestige for a period of six months, whereby Prestige would produce and sell boats made using **Plaintiff's molds and plugs** in exchange for a royalty fee . . .

> 6. The specific terms of the Oral License Agreement were that: (a) Prestige agreed to pay Kalil [KDC] royalties . . . per 23-foot boat manufactured with **Kalil's "Barracuda" molds and plugs**; (b) **Kalil** agreed to provision the agreed upon materials (i.e., **the Plaintiff's molds and plugs**); . . .

[DE 70, p.8 (emphasis supplied)]. Notably, in their Amended Answer, Appellees did *not* challenge KDC's standing to bring the Complaint.

10

On January 12, 2024, Appellees filed a Motion for Partial Summary Judgment [DE 82], a Memorandum in Support [DE 83] and a supporting Statement of Material Facts [DE 81].  KDC filed a Statement of Material Facts [97] and a Memorandum of Law in Opposition [DE 96] on February 5, 2024.  Appellees filed a Reply Statement of Material Facts [DE 119] and Reply Memorandum [DE 120] on March 29, 2024.

Meanwhile, KDC filed a Motion for Summary Judgment and Memorandum of Law [DE 102] and Statement of Material Facts [DE 101] on February 15, 2024.  Appellees filed a Memorandum in Opposition [DE 112] and Statement of Material Facts [DE 113] on March 18, 2024.  KDC filed a Reply [DE 117] and Statement of Material Facts [DE 118] on March 27, 2024.

In their Memorandum of Law in Support of Motion for Partial Summary Judgment [DE 83], Appellees argued, for the first time, that KDC did not own the Barracuda Molds or its related intellectual property.  [DE 83, p.6].  Appellees based this claim on Kalil's deposition, where Kalil testified that he owned the molds and plugs, as well as the related intellectual property, personally.  [DE 83, p.5].

However, Kalil also testified to his understanding that he had assigned the intellectual property rights to KDC through the License Agreement, and that he always licensed the molds and plugs through an entity, not from himself, personally. [DE 96, p.3].

11

Q.· . . . The design of these Barracuda molds at some point, was it assigned over to Kalil Design Concepts, LLC?

A.· It was -- the way the contract was written, I would cause that to be -- to cause or be cause and that was language that an attorney developed for me, so I didn't have to write a license from this one to this one.  I just had to write the license through this.  And by listing the intellectual property on the back of it, that was sufficient to license Tommy [Pownall] the IP.

Q.  All right.· And that -- you're talking about the license agreement that you have in front of you there as Exhibit 2, right?
    I mean –

A.  Yes.

Q.  All right. Well, and it's attached to the Complaint, which is Exhibit 2 to be more precise.
    But in terms of – how did Kalil Design Concepts, LLC acquire the intellectual property associated with these molds?

A.· I assigned it through this contract.

Q.· Okay.· So in the contract that you have in front of you there, there's an assignment over to Kalil Design Concepts, LLC?

A.· I don't know that I would call it an assignment.· The clause was covered -- I don't know exactly where it is.
    But Kalil Design would cause or grant to be caused -- it was -- it was legal terminology that I didn't fully understand, but I was advised that it -- that it would achieve the goal.

Q.  . . . There's no separate document that would reveal the ownership interest of Kalil Design Concepts, LLC in the intellectual property associated with the Barracuda molds and plugs?

A.· ·Not to my knowledge, but I haven't consulted that with my patent attorney.

Q.· ·All right.· And is -- who's your patent attorney?

12

A.· ·Jeff Lloyd.

Q.· ·And the molds themselves and the plugs the physical not just the intellectual property, who owned those before Kalil Design Concepts, LLC was formed?

A.· ·I've always owned those.

Q.· ·Individually?

A.· ·Yes.

Q.· ·All right.· And then –

A.· ·But they've never been licensed from me individually.· That's why they've always been licensed through an entity, and I believe that's where that language came in.

[DE 81-1, pp. 9-10].

Based on that testimony, Appellees argued on summary judgment that "KDC has no ownership interest in the Barracuda molds (or the intellectual property attendant thereto)" and thus "it lacks standing to bring its claims, has suffered no damages, the contract lacks consideration, and its claims based on the Barracuda claims must fail as a matter of law . . . ." [DE83, p. 6].  That argument, of course, was in direct contradiction to Appellees' Amended Answer and the signed License Agreement.  [DE 70, p.8].

The district court heard argument on July 10, 2024.  [DE 134].  On August 27, 2024, the court entered its Summary Judgment Order as to the Barracuda Molds and the Rhino Molds.  [DE 135].

*The Barracuda Molds*

The court found that Kalil, the owner of the Barracuda Molds, had not assigned his interest in the Barracuda Molds to KDC for purposes of licensing the Molds to Appellees when he signed the License Agreement on behalf of KDC. [DE 135, pp. 8-14]. Based on this factual finding, the court drew the following conclusions:

1. KDC lacked standing to sue Appellees for the unlawful retention of intellectual property that KDC did not own. [DE 135, p.15].

2. There was no consideration for the License Agreement and KDC did not suffer any damages from Appellees' failure to return the Barracuda Molds because KDC did not have the authority to transfer the Barracuda Molds and the License Agreement was thus invalid as a matter of law for lack of consideration. [DE 135, pp. 15-16].

3. Accordingly, Counts I (breach of License Agreement), II (conversion as to Barracuda molds) and III (declaratory judgment as to validity of License Agreement) of the Complaint failed as a matter of law and Appellees prevailed on those counts as well as Count III (declaratory judgment as to invalidity of License Agreement) of the Counterclaim. [DE 135, p.15].

As a result, the Barracuda Molds, despite being owned by Kalil, remained in the possession of Appellees. [DE 135, p. 5].

*The Rhino Molds*

At the summary judgment hearing, the parties disputed whether the written License Agreement encompassed the Rhino Molds. Appellees' counsel argued that the License Agreement did not cover the later-acquired Rhino Molds. [DE 134,

pp.11, 13]. Appellant's counsel pointed to the language of the License Agreement stating: "Additional models will have royalty agreements structured as they become available." [DE 134].

In its Summary Judgment Order, in the "Rhino Molds" section, the district court did not rule directly on whether the License Agreement covered the later-acquired Rhino Molds. The court also did not address the fact that it had separately ruled in the "Barracuda Molds" section that the License Agreement was invalid as a matter of law.

Instead, the court seemed to accept, for purposes of its Rhino Molds analysis, that the License Agreement *is* a potentially valid contract: "The [KDC/White] Agreement and the Licens[e] Agreement are separate contracts, arising from separate transactions, executed at different points . . . ." [DE 135 p.18]. The court ruled, however, that a breach of the License Agreement by Appellees' refusal to return the Molds did not excuse Appellant from performing under the KDC/White Agreement. [DE 135 p.18]. The court concluded that KDC was required to pay $40,000 to Pownall, standing in White's shoes, in order to maintain its rights to the Rhino Molds and to prevent those rights from reverting to Pownall as an assignee of the KDC/White Agreement. [DE 135 pp. 18-19].

The court further found that Appellant's deposit of $40,000 into the court registry pursuant to its motion to "preserve the status quo" did not alter KDC's

obligation to pay Appellees the $40,000. [DE 46 p.3, DE 135 p. 19]. Notably, however, the court did not order return of the $40,000, which remains in the court registry.

As a result of its findings, the court granted summary judgment to Appellees on Count VI of their counterclaim, declaring Appellee Pownall to be the owner of the Rhino Molds. The court also granted summary to Appellees on Count II of the complaint (conversion as to the Rhino Molds). [DE 135, p. 20].

The court stayed resolution pending appeal as to the following counterclaims: Count I (breach of oral contract); Count II (unjust enrichment); Count IV (forgery); and Count V (FDUTPA). The court denied two counts as moot: Count VII (aiding and abetting); and VIII (tortious interference).

On October 9, 2024, the court entered Partial Final Judgment. [DE 141]. This appeal now follows.

## III. Statement of the standard of review.

"[I]n evaluating a motion for summary judgment, the inferences to be drawn from the underlying facts contained in the materials presented to the court must be viewed in the light most favorable to the party opposing the motion." *Roach v. M/V Aqua Grace*, 857 F.2d 1575, 1582 (11th Cir. 1988). "The nonmoving party's evidence must be taken as true." *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). For purposes of reviewing the court's entry of summary

judgment, "the facts and all reasonable inferences" are viewed "in the light most favorable" to the non-moving party. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *O'Neal v. Santiago*, No. 23-11303, 2024 WL 3339237, at *1 (11th Cir. July 9, 2024) (citing Fed. R. Civ. P. 56(a)). However, summary judgment is *not* appropriate where there are "two competing contradictory stories of what happened." *Harrison v. City of Fort Lauderdale*, No. 17-61164-CIV, 2018 WL 9516029, at *6 (S.D. Fla. Dec. 21, 2018), *aff'd sub nom. Harrison v. Davidson Hotel Co., LLC*, 806 Fed. Appx. 684 (11th Cir. 2020); *Delices v. Martin*, No. 3:22CV5051/MCR/ZCB, 2024 WL 2886174, at *2 (N.D. Fla. Feb. 27, 2024), *report and recommendation adopted,* No. 3:22CV5051/MCR/ZCB, 2024 WL 2882569 (N.D. Fla. June 7, 2024) (citing *Hall v. Bennett*, 447 F. App'x 921, 924 (11th Cir. 2011)).

Competing contradictory stories make summary judgment inappropriate because at the summary judgment stage it "is inappropriate for the district court to make credibility determinations or to weigh the evidence." *Delices*, 2024 WL 2886174, at *2. Where the case presents "two competing, contradictory stories of what happened," the Court cannot "improperly weigh[ ] the witnesses' credibility

17

by favoring [the defendant's] account over [the plaintiff's]." *Nix v. Carter*, No. 5:10-CV-256, 2012 WL 1019162, at *1 (M.D. Ga. Mar. 26, 2012) (finding summary judgment for defendant "inappropriate").

## SUMMARY OF THE ARGUMENT

The district court erred in finding on summary judgment that Appellant is neither the owner nor transferee of the Barracuda Molds. Under Florida law "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." *Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002). Here, Kalil and KDC, as well as Appellees, performed under the License Agreement. Kalil and KDC granted access and Appellees took possession of both the physical Molds, located at KDC's storage lot, and the related intellectual property, owned by Kalil.

"[W]here one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner." *Seritage SRC Fin., LLC v. Town Ctr. at Boca Raton Tr.*, 397 So. 3d 44, 46–47 (Fla. 4th DCA 2024). Interpreting the License Agreement as *not* covering the Barracuda Molds – and therefore unenforceable as to those Molds -- is an "absurd conclusion" at odds with the specific intent of the parties as set forth in the License Agreement.

Further, Appellees, as Licensee, acknowledged that "ownership of all Plugs and Molds for producing Products (including all Barracuda Plugs and Molds, as well as other Plugs and Molds owned by Licensor or Licensor's affiliate) . . . reside[d] with Licensor [KDC]."  [DE 1, p.12 (emphasis supplied)].  Kalil, as a member of KDC, was an "affiliate" of KDC.  Accordingly, Appellees agreed that ownership of the Barracuda Molds owned by Kalil "resided" with KDC.

Notably, Licensor agreed to "take all steps necessary to grant **or cause to be granted** to Licensee the "Licensed Patents" . . .  and Know-How."  [DE 1, p.2 (emphasis supplied)].  Accordingly, to the extent that it was necessary, KDC should have been allowed to "cause to be granted" to Appellees the Licensed Patents and Know-How by obtaining a written assignment from Kalil.

However, the district court erred in finding in the first instance that a written assignment from Kalil to KDC was required *before* KDC could legally license the Molds to Appellee.  First, no written assignment was required to transfer the *physical* molds.  *Stewart v. Hooters of Am., Inc.*, 432 Fed. Appx. 903, 905–06 (11th Cir. 2011) (under Florida law, an assignment need ***not*** be in writing).  As to the intellectual property, although 17 U.S.C. § 204 requires the transfer of a copyright ownership to be in writing, the writing "need not be contemporaneous with the transfer of copyright ownership."  *Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1369 (S.D. Fla. 2015).  Similarly, a plaintiff *cures any*

19

*standing issue* where he orally conveyed patents prior to suit with a subsequent written assignment where, as here, no evidence suggested that the plaintiff intended to personally maintain or assign the patent to a third entity. *See Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-386-EAK-MAP, 2014 WL 2003128, at *2-3 (M.D. Fla. May 15, 2014). As to trademarks, where a trademark assignment is not filed with the USPTO, the parties may nevertheless act under an *implied* license to use the trademark. *See Am. Tech. Ventures, LLC v. Orlov*, No. 20-23728-CIV, 2021 WL 4973536, at *5 (S.D. Fla. June 9, 2021).

Based on the foregoing, there is at the very least a disputed issue of material fact as to KDC's ownership of the Barracuda Molds and intellectual property, and KDC's standing to bring suit. Accordingly, the district court erred in finding that the License Agreement was invalid and unenforceable. The district court also erred in finding that the License Agreement invalid and unenforceable when it also encompassed the later-acquired Rhino Molds.

As a result of the foregoing, the court erred in granting Appellees' motion for summary judgment as to Count I of the Complaint (breach of the License Agreement), Count III of the Complaint (seeking declaratory judgment as to validity and enforceability of License Agreement and return of personal property), and Count III of the Counterclaim (seeking declaratory judgment that License Agreement is invalid and unenforceable).

20

The court also erred in finding on summary judgment that Appellees own the Rhino Molds. The court found that the KDC/White Agreement and the License Agreement are "separate contracts, arising from separate transactions, executed at different points—and performance under the [KDC/White Agreement] and the Licens[e] Agreement is not conditioned upon performance under the Licens[e] Agreement or vice versa." [DE 135 p. 18]. The court concluded that KDC was required to pay Appellees the $40,000 due under the KDC/White Agreement regardless of any breach of the License Agreement by Appellees. [DE 135, p. 18].

However, Appellees' refusal to return the Rhino Molds (as well as the Barracuda Molds) put them in violation of the KDC/White Agreement *as well as* the License Agreement. As a result of the transfer of the KDC/White Agreement to Appellees, Appellees "stood in the shoes" of White with respect to the KDC/White Agreement. By standing in White's shoes, Appellees were subject to the provisions of the KDC/White Agreement, *including that KDC was entitled to possession of the Rhino Molds*. By continuing to fail to return the Rhino Molds, even after standing in White's shoes, Appellees were *interfering with KDC's right of possession under the KDC/White Agreement*. As a result, Appellees were now in violation of the KDC/White Agreement *as well as* the License Agreement.

Because Appellees stepped into White's shoes for purposes of the KDC/White Agreement and then materially breached the KDC/White Agreement by interfering

with KDC's right to possession of the Rhino Molds, the obligation of the non-breaching party, KDC, to pay $40,000 under the KDC/White Agreement was "excused."  Therefore, the court erred in finding on summary judgment that Pownall was the owner of the Rhino Molds based on KDC's failure to pay $40,000 to Pownall. The court thus erred in granting summary judgment to Appellees on Count IV of the Counterclaim (seeking declaratory judgment that Pownall as the owner of the Rhino Molds).

Finally, the district court found in favor of Appellees on KDC's conversion claims on its prior findings that KDC did not have ownership of the Barracuda Molds and Appellees owned the Rhino Molds.  Accordingly, the court erred in granting summary in favor of Appellees on Count II of the Complaint.

## **ARGUMENT**

## I.  THE DISTRICT COURT ERRED IN FINDING ON SUMMARY JUDGMENT THAT KDC IS NEITHER THE OWNER NOR TRANSFEREE OF THE BARRACUDA MOLDS

The district court found that KDC is neither the owner nor transferee of the Barracuda Molds.  The court grounded this finding on the fact that Kalil, the owner of the Barracuda Molds, signed the License Agreement on behalf of KDC but not in his individual capacity, and thus was not a party to the License Agreement, and because there was no written assignment of the Barracuda Molds from Kalil to KDC for purposes of licensing them to Appellees.  [DE 135, p.8].

However, "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1269 (S.D. Fla. 2020). "A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Id.* at 1270; *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 503 (Fla. 4th DCA 2003) (party assented to the contract by performing under the contract).

Thus, "while it is true that non-signatories are generally not bound by contracts, 'traditional principles of state law' may allow 'a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and estoppel." *ConSeal Int'l.*, 488 F. Supp. 3d at 1270 (citations omitted). "[A] party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage." *Id.* "[E]quitable estoppel prevents a party from benefiting 'from the terms of a contract while simultaneously avoiding its burdens.'" *Id.* (citation omitted).

"[A] court can enforce a written contract despite the absence of a party's signature if other facts or circumstances establish mutuality or assent." *CNJ Realty Associates, LLC v. Yankiv*, 50 Fla. L. Weekly D117 (Fla. 2d DCA Jan. 3, 2025)

(citing *Morali v. Mayan*, 377 So. 3d 1182, 1184 (Fla. 4th DCA 2024)).  "Because a party's performance under a contract can establish that party's assent even in the absence of the party's signature, 'a court should "look to a party's words and conduct to determine whether the party assented to the agreement." ' "  *CNJ Realty Associates*, 50 Fla. L. Weekly D117 (citations omitted); *see Fitzgerald v. Mercedes-Benz Fin. Services USA, LLC*, No. 3:22-CV-1053-MMH-PDB, 2024 WL 3377743, at *6 n.12 (M.D. Fla. July 11, 2024).  Under Florida law "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." *Integrated Health Servs.*, 827 So. 2d at 339.

Here, Kalil and KDC, as well as Appellees, performed under the License Agreement.  Kalil and KDC granted access and Appellees took possession of both the physical Molds, located at KDC's storage lot, and the related intellectual property, owned by Kalil. [DE 1, pp. 11, 16].  "Exhibit 1" to the License Agreement listed four items of intellectual property that belonged to Kalil, personally, and were to be licensed to Appellees under the License Agreement.  [DE 1, p. 24; DE 135, p.10].  The cover page of the License Agreement reflects that it was intended to be "among" four parties, including Kalil as well as KDC, Pownall, and Prestige, despite the fact that it did not include a signature line for Kalil to sign individually as well as on behalf of KDC.  [DE 1, p.9].

Kalil's performance under the License Agreement, and Appellees' acceptance of that performance, at the very least raised an issue of fact as to whether Kalil assented to the License Agreement in his individual capacity as well as on behalf of KDC and thus could be bound under and/or could enforce the License Agreement in his individual capacity. Further, having benefitted from the License Agreement, Appellees cannot now reject its terms especially where, by doing so, Appellees remain in possession of Molds that it undisputedly does not own.

For purposes of reviewing the court's entry of summary judgment in favor of Appellees, "the facts and all reasonable inferences" are viewed "in the light most favorable" to Appellant as the non-moving party. *See Pennington*, 261 F.3d at 1265. Here, the "reasonable inference" is that Kalil signed the License Agreement intending for it to bind himself as well as KDC, and that it covered Kalil's physical Molds and intellectual property, and that Appellees intended to enter into the License Agreement with the owner of the subject matter of the License Agreement -- Kalil -- as well as with KDC.

"Under Florida law, 'if one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966 (11th Cir. 2014). "[W]here one interpretation of a

contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner." *Seritage SRC Fin., LLC v. Town Ctr. at Boca Raton Tr.*, 397 So. 3d 44, 46–47 (Fla. 4th DCA 2024).

Here, interpreting the License Agreement as *not* covering the Barracuda Molds – and therefore unenforceable as to those Molds -- is an "absurd conclusion" at odds with the specific intent of the parties as set forth in the License Agreement. On the other hand, the "rational" interpretation of the License Agreement -- more "consistent with reason and probability" -- is that it was intended to cover the Barracuda Molds. *See Interline Brands*, 749 F.3d at 966. Thus, the interpretation of the License Agreement as not pertaining to the Barracuda Molds is "absurd" and must be "abandoned." *Id.*

Further, Appellees, as Licensee, acknowledged that "ownership of all Plugs and Molds for producing Products (including all Barracuda Plugs and Molds, as well as other Plugs and Molds owned by Licensor <u>or Licensor's affiliate</u>) . . . reside[d] with Licensor [KDC]." [DE 1, p.12 (emphasis supplied)]. In its Summary Judgment Order, the district court found that the License Agreement defines the term "affiliate" to include only corporate entities, not individuals like Kalil. [DE 135, p.13]. However, the License Agreement's definition of "Affiliate" pertained solely to affiliates of ***Licen<u>see</u>***:

1.13 The term "Affiliate" shall mean any present or future companies, corporations, [etc.] directly or indirectly <u>under the control of Licensee</u>, or (b) with respect <u>to which Licensee</u> has effective control, directly or indirectly.

[DE p.11 (emphasis supplied)].

Conversely, the License Agreement does *not* provide a definition for the affiliates of <u>Licensor</u>. Where, as here, the term in a contract is undefined, "courts apply the natural, ordinary and plain meaning to the term." *United States v. Florida W. Intern. Airways, Inc.*, 853 F. Supp. 2d 1209, 1233 (S.D. Fla. 2012). "When interpreting contracts under Florida law, we give words their plain meaning. . . .Words should be given their natural meaning or the meaning most commonly understood." *John M. Floyd & Associates, Inc. v. First Florida Credit Union*, 443 Fed. Appx. 396, 399 (11th Cir. 2011).

Court often refer to the Merriam-Webster dictionary for the plain meaning of a term. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1180 (11th Cir. 2023) (citing *Merriam-Webster Online Dictionary*, <u>https://www.merriam-webster.com/dictionary</u>). According to the Merriam-Webster dictionary, an "affiliate" means to "associate as a member." <u>https://www.merriam-webster.com/dictionary/affiliate</u>. Kalil, as a member of KDC, was an "affiliate" of KDC. Pursuant to the License Agreement, Appellees acknowledged that ownership of molds owned by "Licensor or Licensor's affiliate . . . resides with Licensor." [DE 1, p.11]. Thus, Appellees acknowledged that

27

ownership of Kalil's Barracuda Molds "resides with" KDC. Appellees also admitted in their Amended Answer to Plaintiff's Complaint that Plaintiff KDC owned the Barracuda Molds. [DE 70, p. 8].

Notably, Licensor agreed to "take all steps necessary to grant **or cause to be granted** to Licensee the "Licensed Patents" . . . and Know-How." [DE 1, p.2 (emphasis supplied)]. Note that in Kalil's deposition, he repeated that same phrasing:

> A.· It was -- the way the contract was written, I would **cause that to be -- to cause or be cause** and that was language that an attorney developed for me, so I didn't have to write a license from this one to this one. I just had to write the license through this. And by listing the intellectual property on the back of it, that was sufficient to license Tommy [Pownall] the IP.
> *   *   *
> A. . . . But **Kalil Design would cause or grant to be caused** -- it was -- it was legal terminology that I didn't fully understand, but I was advised that it -- that it would achieve the goal.

[DE 81-1, pp. 9-10 (emphasis supplied)].

Accordingly, to the extent that it was necessary, KDC should have been allowed to "cause to be granted" to Appellees the Licensed Patents and Know-How by obtaining a written assignment from Kalil. However, the district court erred in finding in the first instance that a written assignment from Kalil to KDC was required *before* KDC could legally license the Molds to Appellee.

The district court cited to certain case law in finding that Kalil's *intellectual property* rights in the Barracuda Molds could only be assigned in writing. [DE 135,

p. 9]. The court then concluded that "Kalil could not transfer his rights in the Barracuda molds to [KDC] absent a written instrument." [DE 135, p. 9]. In reaching this conclusion, however, the court did not differentiate between the *physical* Barracuda Molds and its related *intellectual property*. The court provided no basis for finding that assignment of the *physical* Barracuda Molds needed to be in writing, nor is there any. And in fact, "[u]nder Florida law, an assignment need *not* be in writing." *Stewart v. Hooters of Am., Inc.*, 432 Fed. Appx. 903, 905–06 (11th Cir. 2011) (emphasis supplied).

As to the "intellectual property attendant" to the Barracuda Molds, there was no requirement for Kalil to provide a written transfer of the intellectual property *before* KDC entered into the License Agreement or filed the instant action. Although 17 U.S.C. § 204 requires the transfer of a copyright ownership to be in writing, the writing "need not be contemporaneous with the transfer of copyright ownership." *Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1369 (S.D. Fla. 2015). The Eleventh Circuit has found that "a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer *ab initio*." *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). A "later writing signed by copyright owner and transferee memorializing oral agreement cured defects in standing, although signed after suit was filed." *Id.* (emphasis supplied) (district court *erred* in finding a later-

29

signed agreement was a "self-serving attempt to transfer ownership of the cause of action after infringement had occurred").

As to patents, a plaintiff *cures any standing issue* where he orally conveyed patents prior to suit with a subsequent written assignment where no evidence suggested that the plaintiff intended to personally maintain or assign the patent to a third entity. *Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-386-EAK-MAP, 2014 WL 2003128, at *2-3 (M.D. Fla. May 15, 2014). As to trademarks, where a trademark assignment is not filed with the USPTO, the parties may nevertheless act under an *implied* license to use the trademark. *See Am. Tech. Ventures, LLC v. Orlov*, No. 20-23728-CIV, 2021 WL 4973536, at *5 (S.D. Fla. June 9, 2021). "[A]n implied license in fact arises out of the objective conduct of the parties, which a reasonable person would regard as indicating that an agreement has been reached." *Id.*

Here, there was no evidence that Kalil intended to personally maintain or assign the intellectual property other than to KDC for licensing to Defendants. As discussed above, the License Agreement, signed by Kalil, stated: "Licensor [KDC] represents and warrants that Licensor will take all steps necessary to grant or cause to be granted to Licensee [Appellees] the Licensed Technology and has the legal power and authority to extend the rights granted to." [DE 1, p.19 (emphasis supplied)]. The Parties agreed "promptly to execute, forward, or otherwise provide

30

<u>all documents and material necessary or desirable to effectuate this Agreement</u>."
[DE 1, p.22 (emphasis supplied)].  As KDC's attorney argued, Kalil "represented and warranted that he had [the authority], and there has been no proof or evidence that there was an unauthorized effort to convey, transfer or license something that they didn't have the legal ability to do."  [DE 134, p.39].

Based on the foregoing, there is at the very least a disputed issue of material fact as to KDC's ownership of the Barracuda Molds and intellectual property and KDC's standing to bring suit.  "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *O'Neal v. Santiago*, No. 23-11303, 2024 WL 3339237, at *1 (11th Cir. July 9, 2024) (citing Fed. R. Civ. P. 56(a)).  However, summary judgment is *not* appropriate where there are "two competing contradictory stories of what happened."  *Harrison*, 2018 WL 9516029 at *6, *aff'd sub nom.*, 806 Fed. Appx. At 684); *Delices*, 2024 WL 2886174, at *2, *report and recommendation adopted,* 2024 WL 2882569 (citing *Hall v. Bennett*, 447 F. App'x at 924).

Competing contradictory stories make summary judgment inappropriate because at the summary judgment stage it "is inappropriate for the district court to make credibility determinations or to weigh the evidence." *Delices*, 2024 WL 2886174, at *2 (citing *Sears v. Warden*, 762 F. App'x 910, 914 (11th Cir. 2019)).

31

Where the case presents "two competing, contradictory stories of what happened," the Court cannot "improperly weigh[ ] the witnesses' credibility by favoring [the defendant's] account over [the plaintiff's]." *Nix*, 2012 WL 1019162, at *1 (finding summary judgment for defendant "inappropriate").

Here, the Court's determination that KDC lacked standing was grounded on Defendants' summary judgment argument that "KDC has no ownership interest in the Barracuda molds (or the intellectual property attendant thereto)." [DE 83, p.6; DE 135, pp.14-15]. Since such "story of what happened" is directly contradicted by "the facts and all reasonable inferences" that KDC was, in fact, the owner or transferee or intended transferee of the Barracuda molds and intellectual property, summary judgment in favor of Appellees "on the issue of ownership of the Barracuda molds" [DE 135, p.15] was inappropriate.

## II. THE DISTRICT COURT ERRED IN FINDING THAT THE WRITTEN LICENSE AGREEMENT IS INVALID AND UNENFORCEABLE

The district court found the License Agreement invalid for lack of consideration based on its finding that KDC did not suffer any damages from Appellees' failure to return the Barracuda Molds because KDC did not have the authority to transfer the Barracuda Molds. [DE 135, pp. 15-16]. The court's finding that KDC did not have the authority to transfer the Barracuda Molds was incorrect, as discussed above, and thus the court erred in finding the License Agreement invalid for lack of consideration.

There is a second basis for finding that the court erred in finding the License Agreement to be invalid and unenforceable.  As discussed above, the district court did not squarely address the issue of whether the License Agreement, signed in 2020, encompassed the later-acquired Rhino Molds.  However, the License Agreement indicated that it would apply to other Molds obtained in the future:  "Additional models will have royalty agreements structured <u>as they become available</u>."  [DE 1, p.14 (emphasis supplied)].  There is no evidence of any written or oral agreement, *other than* the written License Agreement, that would have applied to Appellees' possession and use of the Rhino Molds.

And, in fact, the court seemed to accept, for purposes of its Rhino Molds analysis, that the License Agreement *is* a potentially valid contract:   "The [KDC/White] Agreement and the Licens[e] Agreement are separate contracts, arising from separate transactions, executed at different points . . . ."  [DE 135 p.18].  Thus, even putting aside KDC's authority to transfer the Barracuda Molds, there is at the very least a disputed issue of fact as to whether the License Agreement covered the transfer of the Rhino Molds to Appellees.  Thus, the court erred in finding the License Agreement invalid and unenforceable as a matter of law.

III. **THE DISTRICT COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT (BREACH OF THE LICENSE AGREEMENT), COUNT III OF THE COMPLAINT (SEEKING DECLARATORY JUDGMENT AS TO VALIDITY AND ENFORCEABILITY OF LICENSE AGREEMENT AND RETURN OF PERSONAL PROPERTY), AND COUNT III OF THE COUNTERCLAIM (SEEKING DECLARATORY JUDGMENT THAT LICENSE AGREEMENT IS INVALID AND UNENFORCEABLE).**

As discussed above, the district court erred in finding on summary judgment that KDC is neither the owner nor transferee of the Barracuda Molds and in finding the License Agreement to be invalid and unenforceable. Accordingly, the court erred in granting Appellees' motion for summary judgment as to Count I of the Complaint (breach of the License Agreement), Count III of the Complaint (seeking declaratory judgment as to validity and enforceability of License Agreement and return of personal property), and Count III of the Counterclaim (seeking declaratory judgment that License Agreement is invalid and unenforceable).

IV. **THE DISTRICT COURT ERRED IN FINDING ON SUMMARY JUDGMENT THAT APPELLEES OWN THE RHINO MOLDS AND THEREFORE GRANTING SUMMARY JUDGMENT TO APPELLEES ON COUNT VI OF THE COUNTERCLAIM (SEEKING DECLARATORY JUDGMENT THAT POWNALL IS OWNER OF RHINO MOLDS).**

The court cited to *Bradley v. Health Coal, Inc.*, 687 So. 2d 329, 331 (Fla. 3d DCA 1997) for the proposition that the material breach of a contract excuses the performance of the non-breaching party. [DE 135, p 17]. The court also cited to *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1439 (7th Cir. 1993) for the proposition that "one party's breach of contract may excuse the other from

34

performing, but it will not excuse the other from the performance due from him under a separate contract between the parties unless of course performance under the one contract is conditioned expressly on performance under the other."

The court found that the KDC/White Agreement and the License Agreement are "separate contracts, arising from separate transactions, executed at different points—and performance under the [KDC/White Agreement] and the Licens[e] Agreement is not conditioned upon performance under the Licens[e] Agreement or vice versa." [DE 135 p. 18]. The court concluded that KDC was required to pay Appellees the $40,000 due under the KDC/White Agreement regardless of any breach of the License Agreement by Appellees. [DE 135, p. 18].

However, Appellees' refusal to return the Rhino Molds (as well as the Barracuda Molds) put them in violation of the KDC/White Agreement *as well as* the License Agreement. KDC's attorney sent a demand letter to Appellees on June 17, 2022, demanding return of the Molds. [DE 101-7]. Pownall's refusal to return the Molds initially violated the License Agreement, which states:

> 2.7 The parties expressly agree that the <u>Molds are the exclusive property of Licensor and are subject to being returned to Licensor at any time</u>, on no more than 7 days notice.

[DE 1, p.13 (emphasis supplied)].

On June 25, 2022, White assigned his rights under the White Agreement to Pownall in exchange for $40,000. [DE 135, p.4]. As a result of that transfer,

Appellees "stood in the shoes" of White with respect to the KDC/White Agreement. [DE 135, pp.12, 19-20 (citing *United Water Restor. Grp. Inc. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025, 1027 (Fla. Dist. Ct. App. 2015) (once there is an assignment, "[t]he assignee stands in the shoes of the assignor)].  By standing in White's shoes, Appellees were subject to the provisions of the KDC/White Agreement, *including that KDC was entitled to possession of the Rhino Molds*.

Nevertheless, Appellees continued to remain in possession of both the Rhino and Barracuda Molds.  [DE 135, p. 5].  By continuing to fail to return the Rhino Molds, even after standing in White's shoes, Appellees were *interfering with KDC's right of possession under the KDC/White Agreement*.  As a result, Appellees were now in violation of the KDC/White Agreement *as well as* the License Agreement.

Because Appellees stepped into White's shoes for purposes of the KDC/White Agreement and then materially breached the KDC/White Agreement by interfering with KDC's right to possession of the Rhino Molds, the obligation of the non-breaching party, KDC, to pay $40,000 under the KDC/White Agreement was "excused." *See Bradley*, 687 So. 2d at 331.  Therefore, the court erred in finding on summary judgment that Pownall was the owner of the Rhino Molds based on KDC's failure to pay $40,000 to Pownall.[3]  The court thus erred in granting summary

---

[3] It should be noted that KDC did, in fact, pay $40,000, first into his counsel's trust

judgment to Appellees on Count IV of the Counterclaim (seeking declaratory judgment that Pownall as the owner of the Rhino Molds).

## V. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON COUNT II OF THE COMPLAINT (CONVERSION OF THE BARRACUDA AND RHINO MOLDS).

The district court found that KDC's conversion claim in Count II failed as to the Barracuda Molds based on its finding that KDC did not have ownership of the Barracuda Molds. [DE 135, p. 15]. The court found that the conversion claim failed as to the Rhino Molds based on its finding that Appellees owned the Rhino Molds. [DE 135, p. 20]. For the reasons discussed above, the court erred in granting summary in favor of Appellees on Count II of the Complaint.

---

account and then into the court registry. KDC moved to deposit the $40,000 into the court registry specifically seeking to "preserve the status quo" pending resolution of the case. [DE 46]. Although the court stated that nothing in its order should be construed as an "indication of the merits," it nevertheless accepted the funds into the court's registry. [DE 52].

The court then found in its Summary Judgment Order that the relevant "status quo" under the KDC/White Agreement was that KDC *still* had to pay Pownall $40,000 by May 23, 2023, and had failed to do so, thus losing ownership of the Rhino Molds. [De 135, p.19]. By such a finding, the court rendered KDC's deposit into the registry essentially meaningless, except for the fact that KDC was now out of pocket by $40,000, in addition to losing ownership of the Rhino Molds.

A more reasonable view of the $40,000 deposit into the court registry is that by doing so, KDC had now completed its only requirement under the KDC/White Agreement to retain ownership of the Rhino Molds. The status quo was now preserved pending resolution of the case.

**CONCLUSION**

Based on the foregoing, summary judgment on all counts (Counts I-III of the Complaint and Counts III and VI of the Counterclaim) should be reversed, and the cause remanded to the district court for further proceedings.

Respectfully Submitted,

Counsel for Appellants,

/s/Donna Greenspan Solomon
Donna Greenspan Solomon
FL Bar No. 059110
Donna@SolomonAppeals.com
SOLOMON APPEALS,
MEDIATION & ARBITRATION
901 So. Federal Hwy, Ste. 300
Ft. Lauderdale, FL  33316
561-762-9932
*Lead Counsel*

DONALD THOMAS
FL Bar No. 834599
don@cbrlawgroup.com
CBR LAW GROUP, LLLP
55 Ne 5th Ave Ste 503
Boca Raton, FL 33432
561-609-1515
*Co-counsel*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,878 words.

2.    This document complies with the typeface requirements of Fed. R. App P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced type face using Microsoft Word for Mac version 16.91 in Times New Roman 14.

/s/Donna Greenspan Solomon
Donna Greenspan Solomon, Esq.
*Appellant's Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, four (4) copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the brief was served on all counsel of record by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Rachel L. Garcia*
Counsel Press
Filing and service were performed by direction of counsel